UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JONATHAN LEE BYRD,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | Case No. SACV 12-2026 AJW<br><br>MEMORANDUM OF DECISION |

    Plaintiff filed this action seeking reversal of the decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

    The parties are familiar with the procedural facts. [See JS 2]. In a May 6, 2011 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of Type 1 diabetes with hypoglycemic seizures and diabetic poly neuropathy with lumbalgia, but that those impairments did not preclude plaintiff from performing alternative work that exists in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of her decision. [See JS 2;

1 | Administrative Record ("AR") 16-30].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Treating physician's opinion**

Plaintiff contends that the ALJ erred in evaluating the opinion of treating physicians Dr. Bernstein and Dr. Jernigan. [See JS 5-18].

The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. [AR 23]. The ALJ said that she gave "great weight" to the opinion of the medical expert, Dr. Samuel Landau, whose opinion she found "well-supported by the objective medical evidence" and "consistent with the record as a whole, including the evaluations by [examining] specialists Dr. Bohachevsky, Dr. Ogsbury, and Dr. Cohen." [AR 27]. The ALJ rejected the opinion of treating pain specialist Dr. Bernstein, and implicitly rejected in part the opinion of another treating physician, Dr. Jernigan. [See AR 25-27].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.

2001). A treating physician's opinion is entitled to greater weight than those of examining or non-examining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2).

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Orn, 495 F.3d at 632; Tonapetyan, 242 F.3d at 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

In September 2004, plaintiff consulted Dr. Bernstein, a pain management specialist to whom he had been referred by his primary care physician, Dr. Reddy. [AR 555]. Dr. Bernstein treated plaintiff approximately monthly through September 2005, and saw plaintiff for a final visit in January 2006. [AR 25-26, 502-555, 599-600].

In reports prepared for use in plaintiff's workers' compensation case, Dr. Bernstein noted that plaintiff said that he suffered a lumbar contusion and other injuries in December 2002 after falling from a second story structure while working at a lumber yard. Plaintiff complained of back and left leg pain that had not responded to physical therapy, aquatic therapy, or acupuncture. Plaintiff said that his pain had not been completely controlled even while taking OxyContin 40 milligrams twice daily. Plaintiff reported that he had tapered himself off that medication some four months earlier and was not then taking any narcotic pain medication. [AR 551].

After eliciting a history, conducting an examination, and reviewing plaintiff's medical records, Dr Bernstein diagnosed discogenic back pain, lumbar spine strain/sprain syndrome, lower extremity radiculopathy, reactionary depression/anxiety, and insulin-dependent diabetes. [AR 531, 535, 548]. During the course of treatment, Dr. Bernstein prescribed trials of several narcotic pain medications (Norco, OxyContin, methadone, and finally MS Contin); Celexa, a nonsteroidal anti-inflammatory drug; a daily 5% lidocaine patch for pain; and Topamax, a "mild neuropathic pain-modulating agent" [AR 552] to help relieve plaintiff's radicular symptoms. Dr. Bernstein also prescribed two lumbar epidural injections that

plaintiff said did not provide significant relief. [AR 502-555]. Dr. Bernstein obtained a lumbar MRI and referred plaintiff for a consultation with Dr. Mitchell Cohen, an orthopedic spine surgeon. [AR 496-501, 526-527]. Dr. Bernstein also prescribed a trial of spinal cord stimulation. [AR 503]. In his final progress note dated In January 2006, Dr. Bernstein noted that plaintiff said that he had settled his workers' compensation case without getting the "surgery that [he] wanted," and that he asked to be taken off all opiate medications because, although he was still in pain, they were "too expensive for him and they are causing too many side effects that he does not want." [AR 599]. Dr. Bernstein formulated a plan to taper plaintiff off opiate medications. His diagnoses were unchanged. [AR 600].

In March 2005, Dr. Bernstein completed a two-page "Ability to Do Work-Related Activities (Physical)" Form. [AR 523-524]. Dr. Bernstein described plaintiff's prognosis as "poor." He opined that plaintiff could sit for one to two hours in an eight-hour day and stand for less than an hour in an eight-hour day; must alternate sitting, standing, and walking at will to relieve discomfort; frequently or constantly experienced symptoms severe enough to "prevent attention and concentration"; "absolutely" would have unexpected absences from work due to his impairments; would sometimes need to lie down at unpredictable intervals; and could not consistently complete tasks in a timely manner. [AR 523-524]. Dr. Bernstein remarked that he did not think plaintiff could work aneight-hour day but might be able to work for 4 hours. [AR 523]. He also commented that plaintiff is "very disabled in [sic] will most likely not find employment. He is on high doses of narcotics at this point. I think the patient may need surgery or invasive pain management [therapy] like a spinal cord stimulator." [AR 524].

The ALJ said that she did not give Dr. Bernstein's opinion "controlling weight" or "great weight" because his

> extreme functional limitations are not supported by significant positive clinical or diagnostic findings in the record. For example, Dr. Bernstein's objective findings from October 2004 through March 2005 consist primarily of the following: stiff, mildly antalgic gait favoring the lower left extremity; decreased lumbar spine range of motion; and tenderness on palpation of the posterior lumbar musculature. Given these findings, it appears that Dr. Bernstein's opinion is based primarily on the claimant's subjective pain complaints during this period. Further, none of the diagnostic testing . . . yielded findings consistent with the

4

limitations asserted by Dr. Bernstein.

[AR 26].

The Ninth Circuit has explained that "[m]erely to state that a medical opinion is not supported by enough objective findings 'does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.' 'Disability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings.'" Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) (quoting Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 19750). "The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." Embrey, 849 F.2d at 421-422. "In addition, the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. This is especially true when the opinion is that of a treating physician." Rodriguez, 876 F.2d at 762 (citing Embrey, 849 F.2d at 422 ("The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.")).

The ALJ did not meet her burden to explain why her interpretation of Dr. Bernstein's findings is correct. In his initial examination report in September 2004 under "Physical Examination," Dr. Bernstein noted findings consisting of

> significant decreased and guarded lumbar range of motion with significant tenderness to palpation throughout his lower lumbar spine. Motor strength of his lower extremities appears to be equally intact bilaterally, however, reflexes were blunted throughout and a sensory deficit was appreciated throughout his lower left extremity.

[AR 552-553].

In his next examination report dated October 2004, Dr. Bernstein commented on his review of a one-inch stack of medical records provided by the insurance carrier. Dr. Bernstein said that he reviewed two MRI studies, an electrophysiologic study, and numerous treating and examining source reports. [AR 545]. He remarked that

> it looks like [plaintiff] has a significant disc bulge and some spinal stenosis noted at L4-5 by the two MRI studies and by the interpretation of Dr. Randall Jernigan. [Plaintiff's] electrophysiologic study also reveals possible radiculopathy in the L5 distribution on the left

5

and the S1 distribution on the right, in addition to a mixed sensorimotor peripheral neuropathy, as would be expected with diabetes mellitus.

[AR 545-546].

In his October 2004 and subsequent progress reports, Dr. Bernstein noted the following under the heading "Objective Findings": stiff, mildly antalgic gait favoring the lower left extremity [AR 511, 530, 541, 544]; decreased lumbar spine range of motion [AR 502, 511, 530, 541, 545]; tenderness to palpation of the posterior lumbar musculature [AR 506, 511, 530, 541, 545]; straight-leg raising test[1] is positive or "significantly positive," either bilaterally or on the left side [AR 502, 517, 520, 528, 534]; "patient is in significant distress" [AR 530]; presents using a cane [AR 502, 506, 511, 530]; "cannot stand up straight" or "hunched over" [AR 502, 506, 530]; "appears to be in distress" [AR 520]; grimaces when getting up, sitting up, ambulating, or moving [AR 517, 520]; "in obvious distress" [AR 517]; "appears in mild-to-moderate amount of distress" and is "uncomfortable" in seated position [AR 508, 511]; "is in moderate to severe pain today" [AR 506]; and multiple "trigger points" that cause "exquisite pain to palpation." [AR 506]. In his March 4, 2005 progress report, the ALJ noted that plaintiff had been to the emergency room twice due to pain. [AR 528]. Treatment records from Los Alamitos Medical Center show that plaintiff presented to the emergency department on January 23, 2005 and February 17, 2005 for acute exacerbation of lower back pain. [AR 556-568, 703-708]. It was noted that plaintiff had an antalgic gait and used a cane. [AR 557, 561].

The MRI ordered by Dr Bernstein report dated March 7, 2005 revealed mild dextroscolosis at the thoracolumbar junction; "congenitally shortened pedicles that have resulted in exacerbation of the degenerative and discogenic disease"; at T12-L1 and L4-L5, mild degenerative endplate changes and 2-3 millimeter broad-based posterior disc bulges with resultant mild compression upon the ventral aspect; moderate central cental stenosis at L4-L5 as a result of the combination of the disc bulge, moderate facet joint arthropathy, and congenitally shortened pedicles; mild bilateral neural foraminal stenosis at L4-L5;

---

[1] The straight leg raising test is positive when the patient is supine, his or her straight leg is flexed at the hip, and pain is reported along the sciatic nerve. A positive straight leg raising test is significant for compression of the L4-L5 or L5-S1 spinal nerve roots. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 18:4 (database updated October 2013).

and mild central canal stenosis at L5-S1 as a result of the moderate facet joint arthropathy and congenitally shortened pedicles. [AR 526-527]. Based on the record as a whole, the ALJ's reference to just three of Dr. Bernstein's findings (antalgic gait, tenderness, and decreased range of motion) understates the extent of the clinical and diagnostic findings supporting his opinion, including positive straight leg raising tests, blunted reflexes, sensory deficit, and positive MRI and electrophysiologic study results.

The Commissioner argues that the ALJ permissibly rejected Dr. Bernstein's opinion because "so-called 'objective findings' rely upon [plaintiff's] outward express of pain; therefore they are within his control. Consequently, they are not truly 'objective.,' such as an x-ray or MRI would be." [JS 14].

That argument is misguided. Under the Commissioner's own regulations, neither a medical opinion nor a finding of disability need be based exclusively on what defendant describes as "truly objective" evidence, such as an x-ray or MRI. "A physical or mental impairment must be established by medical evidence consisting of *signs, symptoms, and laboratory findings*, not only by your statement of symptoms." See 20 C.F.R. §§ 404.1508, 416.908 (italics added). Medical signs "are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. §§ 404.1528(b), 416.928(b). Laboratory findings are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests." 20 C.F.R. §§ 404.1528(c), 416.928(c). The Commissioner's definition of "objective medical evidence" includes both "medical signs" *and* "laboratory findings" as those terms are defined in 20 C.F.R. §§ 404.1528 and 416.928. See 20 C.F.R. §§ 404.1508, 416.908. Symptoms, in contrast, are "your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. §§ 404.1528(a), 416.928(a).

Although the ALJ properly reviewed not only the laboratory findings but also the medical signs Dr. Bernstein noted in his reports, she did not adequately explain why she rejected the treating physician's interpretation of that objective medical evidence. The ALJ also disregarded Dr. Bernstein's conclusion that plaintiff's pain complaints and pain behaviors (such a grimacing and hunching over) were genuine. The

ALJ was obliged to take Dr. Bernstein's subjective judgments into account in the absence of specific, clear, and convincing reasons for rejecting his opinion. Rodriguez, 876 F.2d at 762.

In rejecting Dr. Bernstein's opinion the ALJ also failed to acknowledge or discuss consistencies between his findings and conclusions and roughly contemporaneous medical evidence in the record. As Dr. Bernstein noted, plaintiff's medical records included two past MRI studies and an electrophysiologic study showing significant disc bulge and possible radiculopathy. [AR 545]. The record also includes treatment reports from Mercy Medical Center, where plaintiff received treatment for his workplace injury from January 2003 through September 2003 from Dr. Jernigan and his colleague Dr. Stephen Johnson. Dr. Jernigan gave plaintiff diagnoses of lumbar strain and contusion, lumbar disc syndrome, left leg radiculopathy or "sciatica," and congenitally shortened pedicles. [See AR 354-435]. Positive findings noted by Drs. Jernigan and Johnson in examination reports include antalgic gait favoring the left leg [AR 387, 402, 408, 416, 420, 427]; "extreme tightness and soreness of the left paraspinous muscles" from L3-S1 [AR 427]; appears uncomfortable at rest and/or with activity [AR 408, 420, 425]; when standing, plaintiff tended to lean on something to take the weight off his lower body [AR 425]; tenderness to palpation in the lower lumbar spine and/or left sacroiliac joint area [AR 393, 402, 408, 416, 420, 425]; left hallucis muscle deep tendon reflexes difficult to elicit [AR 408, 425]; weakness and/or decreased dorsiflexion on the left [AR 408, 416, 425]; positive straight leg-raising [AR 360, 393, 402]; use of a cane [AR 360, 388]; and minor sensory loss in the L5 distribution. [AR 360].

Dr. Jernigan signed workers' compensation forms keeping plaintiff off work until July 15, 2003 with diagnoses of lumbar disc syndrome, left leg radiculopathy or "sciatica," and congenitally shortened pedicles. [See AR 354-435]. Dr. Jernigan released plaintiff to "modified duty, 10-pound lifting, 2-pound repetitive lifting for 4 hours per day," provided he could "change positions frequently as he really cannot stay in one position." [AR 384]. Plaintiff returned to work in August 2003 working half-days in the checkout area of the lumber yard. [AR 368]. Plaintiff reported that returning to work benefitted him psychologically but increased his pain and stiffness. [AR 365, 368]. He told Dr. Jernigan that he could no longer live on his own in Colorado and was moving back to California with his mother, who had come out to help him during the time he was seeing Dr. Jernigan. [AR 365, 368]. As a result, Dr. Jernigan noted that he would place plaintiff at maximal medical improvement and give him a final impairment rating. [AR 365].

8

|  |  |
|---|---|
| 1 | In his final examination report dated September 2003, Dr. Jernigan gave plaintiff final diagnoses of |
| 2 | "L4-L5 disk disease with significant chronic back pain and some L5 sensory paresthesias"; diabetes; and |
| 3 | reactive depression, stable. Dr. Jernigan noted that plaintiff had shown little improvement in response to |
| 4 | the conservative treatment Dr. Jernigan prescribed, which included opiate pain medications, ultrasound, hot |
| 5 | packs, stretching, pool therapy, and acupuncture. [AR 354-435]. Plaintiff had declined sacroiliac joint |
| 6 | injections due to concerns about possible complications connected to his diabetes. [AR 393, 402, 411]. Dr. |
| 7 | Jernigan acknowledged that there were some risks involved due to plaintiff's diabetes but noted that |
| 8 | injections were "really the only modality" available that might help his "difficult to control pain" because |
| 9 | plaintiff was not a surgical candidate and had few options left to treat his pain. [AR 368, 411]. |

Dr. Jernigan remarked that plaintiff "continued to have a lot of left leg symptomatology," and an EMG performed by Dr. Willner showed "some evidence of an L5 radiculopathy of the left." [AR 359; see AR 391]. Dr. Jernigan said that he believed plaintiff "has a major l5 causalgia on the left that causes him to cry out at times and causes significant instability to get around [sic] and usage of a cane." [AR 360]. Dr. Jernigan described plaintiff's future care as "complicated," observing that plaintiff "definitely" would need chronic pain medication, and that his condition "may be improved" if he agreed to undergo, and had a "good outcome" from, an epidural injection, an unspecified "surgical invention," or a nucleoplasty. [AR 360]. Dr. Jernigan opined that plaintiff had impairments that equaled a "25% whole person impairment" for Colorado workers' compensation purposes. [AR 360]. Dr. Jernigan opined that plaintiff had

> significant work restrictions in that I really do not think he can lift more than 10 pounds and certainly cannot carry any weight whatsoever. He also is having a lot of problems with bending and extending. He cannot walk or sit for any great length of time, though he has been getting by most of the time working in the checkout stand at the lumber yard. I do think it is likely he will continue to improve with time, and that the permanent restriction he should have for this lumbar disk problem, without further problem, is a 30 pound maximum lifting. If he has further treatment that improves him, this may improve also. Even though at this time 30 pounds causes him significant pain, I think functionally it would not increase the risk of furthering his structural problem.

[AR 360].

The ALJ implicitly rejected Dr. Jernigan's opinion to the extent that it was inconsistent with her RFC finding without articulating specific reasons based on the record and without acknowledging that there are consistencies between the findings and conclusions or Drs. Bernstein and Jernigan. See generally Edlund, 253 F.3d at 1157 & n.6 (stating that even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of, among other factors, consistency with other evidence in the record) (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527).

While disregarding or minimizing consistency between the treating doctors' reports, the ALJ also gave significant weight to positive Waddell's signs noted by two examining physicians, Dr. Bohachevsky, a physical medicine rehabilitation physician, and Dr. Cohen, an orthopedic surgeon.[2] [AR 25-26, 342, 500]. Plaintiff contends that positive Waddell's signs do not signify malingering. [JS 9 (citing Barrios v. Astrue, 2009 WL 413128, at *4 (C.D. Cal. Feb. 17, 2009)]. In Barrios, the Commissioner conceded that "Waddell's signs do 'not signify malingering,'" a concession that the Commissioner has not made in this case and for which no other authority has been cited. Cf. Osenbrock v. Apfel, 240 F.3d 1157, 1166-1167 (9th Cir. 2001) (holding that the ALJ permissibly discredited the claimant's subjective symptom testimony where the ALJ relied, among several other factors, on positive Waddell's signs, "which suggest a functional component to the claimant's pain").

In any event, even assuming that positive Waddell's signs are relevant to assess whether a claimant is malingering, neither Dr. Bernstein nor Dr. Jernigan noted any positive Waddell's signs or suggested that

---

[2] "Waddell signs" refers to one or more of the following positive clinical findings: (1) superficial skin tenderness; (2) non-anatomic pain; (3) simulation of spine loading (axial loading); (4) simulated rotation of shoulders and pelvis; (5) distraction straight-leg raising; (6) regional sensory change; (7) regional weakness (loss of muscle strength, like skin sensation, follows anatomical nerve distributions; weakness in combinations of muscles that are not innervated by the same spinal nerve roots or peripheral nerves cannot be explained anatomically); (8) over-reaction (inappropriately large pain reactions to mild touching during physical examination also indicate to an experienced clinician that the patient's stated symptoms do not correspond to the effects expected from a physical abnormality). Each positive sign is caused by non-anatomical (functional) factors and implies that the back pain has no physical cause. One or two of these signs may arise from patient anxiety or eagerness to cooperate. Three or more are usually considered sufficient to make a diagnosis of functional disorder or deliberate deception (malingering) and to rule out physical abnormality. See 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 18:4 Waddell Signs (database updated October 2013).

they believed plaintiff was malingering. Dr. Bernstein indicated that he reviewed the reports of both Dr. Bohachevsky and Dr. Cohen, to whom Dr. Bernstein had referred plaintiff, and gave no indication that he was concerned about symptom magnification. [AR 521, 545]. Moreover, no positive Waddell's signs were noted by two other examining physicians, Dr. Ogsbury, a neurosurgeon, and Dr. Griffis, an osteopath who served as the workers' compensation independent medical examiner and who gave plaintiff a whole person impairment rating of 23%, very close to Dr. Jernigan's impairment rating of 25%. [AR 350-352, 486-492].

For all of these reasons, the ALJ did not articulate legally sufficient reasons based on the record as a whole for rejecting the opinions of Dr. Bernstein and Dr. Jernigan in favor of the opinion of the nonexamining medical expert.[3]

**Remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886 (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Connett, 340 F.3d at 876

---

[3] This conclusion makes it unnecessary to consider separately plaintiff's contention that the ALJ did not properly consider plaintiff's subjective testimony [JS 18-28] because the ALJ's credibility determination depends, in material part, on her flawed evaluation of the medical evidence. [See AR 24-25].

(explaining that the court has some flexibility in applying the "crediting as true doctrine," and remanding for further administrative proceedings where the ALJ made insufficient findings as to whether the claimant's testimony should be credited as true).

The ALJ did not properly weigh the opinions of Drs. Bernstein and Jernigan, but there are outstanding issues that remain that remain to be resolved before a disability determination can be made. For example, although there are consistencies between the opinions of Dr. Bernstein and Dr. Jernigan, differences also exist, and those differences must be addressed in order to properly weigh those opinions and to properly assess the credibility of plaintiff's subjective complaints. In addition, while plaintiff was treated by Dr. Jernigan for about eight months after his December 2002 workplace injury and by Dr. Bernstein from September 2004 to January 2006, plaintiff alleges that he became permanently disabled as a result of that injury. In these circumstances, a remand for further administrative proceedings is warranted. Cf. Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (holding that the "crediting as true" rule was not mandatory where the improperly rejected treating source opinion failed to identify an onset date); Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (applying the Smolen/Harman remand test to hold that while the ALJ did not properly reject the opinions of the treating physicians or the claimant's subjective complaints and lay witness testimony, several "outstanding issues" remain to be resolved, including "if she is disabled, the timing and duration of her disability," whether the ALJ "must credit her testimony as true,"and for vocational expert testimony).

On remand, the Commissioner shall take appropriate steps to develop the record and shall issue a new decision that contains appropriate findings.

**Conclusion**

For the reasons described above, the Commissioner's decision is **reversed,** and this matter is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

June 10, 2014

_____
ANDREW J. WISTRICH
United States Magistrate Judge